551 A.2d 485

## BOARD OF TRUSTEES OF the FIRE & POLICE EMPLOYEES RETIREMENT SYSTEM OF the CITY OF BALTIMORE

v.

### Ronald J. KIELCZEWSKI.

No. 468, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 5, 1989.

L. William Gawlik, Asst. Sol. of Baltimore City (Sheldon H. Press, Chief Sol. of Baltimore City, on the brief), Baltimore, for appellant.

Paul D. Bekman (Suzanne K. Farace and Israelson, Salsbury, Clements & Bekman, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore City, appellant, appeals from a judgment of the Circuit Court for Baltimore City. That court reversed the decision of a hearing examiner, finding appellee, Ronald J. Kielczewski, entitled to an ordinary disability, as opposed to a special disability, retirement. Two questions are presented for our resolution:

1. Did the lower court err in construing the Special Disability retirement benefit so that the applicant did not have to prove a physical incapacity?

2. Did the lower court err in reversing the Claims Examiner's factual conclusion that the applicant had not proven that his emotional disability was a result of an injury arising out of and in the course of the actual performance of duty?

We answer the first question in the affirmative and so we reverse. That determination is dispositive of the appeal, rendering it unnecessary that we consider the second question.

Neither the facts surrounding appellant's job-related physical injury, nor the hearing examiner's factual determination concerning the nature of appellant's disability is an issue on this appeal. The sole issue which we must resolve is the propriety of the trial court's finding that, as a matter of law, proof of a physical incapacity is not a prerequisite to an award of special disability retirement benefits. Therefore, it is the procedural, rather than the factual, posture of the case on appeal that is most relevant. As a result, we will not set out the facts in any detail. It is sufficient to note that appellant, a 15 year veteran of the Fire Department, received an injury to his right eye in an explosion on May 6, 1980, while on duty fighting a car fire. After the accident, the effect of which was the loss of vision in the injured eye, appellant's emotional and mental state deteriorated.

Appellee filed a claim with the Fire And Police Employees Retirement System of Baltimore for special disability retirement benefits pursuant to Baltimore City Code, art. 22, § 34(e). The basis of his claim, which he sought to establish at a hearing before a hearing examiner, was that his unfitness for the further performance of his duties as a firefighter was caused by both a physical disability and a mental one, each of which arose as a result of his physical injury of May 6, 1980. The reports of the physicians who examined him, however, while supportive of his claim of mental incapacity, tended to establish that he was not physically unfit at all. All of the physicians, including appellee's, agreed that appellee was mentally incapacitated; two of the physicians, namely the Fire Department's chief physician and the Fire Department's expert physician, both opined that appellee was physically fit for the further performance of his duties as a fireman. The hearing examiner found that appellee's incapacity was due to his mental disability, rather than a physical one.[1] Then, construing the

---

1. As we have indicated already, neither party has challenged this finding as being unsupported by the record. Indeed, given the stan-

retirement benefit scheme to require the establishment of a physical incapacity as a prerequisite to the award of special disability retirement benefits, a burden he found appellee had not met, the hearing examiner awarded appellee ordinary disability retirement benefits.

Appellee successfully appealed the decision to the circuit court. In its Opinion and Order Reversing the Board of Trustees of the Fire And Police Employees Retirement System of the City of Baltimore, the trial court ruled "[a]s a matter of law, ... if claimant's incapacitation is, within reasonable medical certainty, a consequence of his on-the-job injury, that is, causally related thereto, and he is otherwise Article 22 qualified, he is entitled to the special retirement benefit even if the incapacity is purely 'mental.'" The reasoning underlying the court's conclusion is reflected in the following discussion:

> There is no clear resolution of [the question whether proof of physical incapacity is required for special disability benefits] to be discerned in the literal text of the Ordinance. While the language speaks of "physical incapacity" in pertinent places, nowhere in the law is there a clearly stated requirement that the incapacity *be* physical. For example § 33(1) requires a finding, not whether there *is* a "physical incapacity"; but whether the physical incapacity resulted from an on-the-job injury. It is entirely logical to conclude that the *injury* to which reference is made is the same injury to which reference is made in the immediately preceding provision requiring an initial finding, *sine qua non*, that there has been "an injury or illness of such a nature as to preclude ... further performance...."

---

dard of review of the factual findings of an administrative agency—to determine whether there was substantial evidence in the record as a whole to support the decision, *see Baltimore Lutheran High School Association v. Employment Security Administration*, 302 Md. 649, 660–61, 490 A.2d 701 (1985)—it is clear that no such challenge could be successfully maintained.

In other words, it can reasonably be concluded that the insertion of the word "physical" was not a conscious qualifier, but rather a descriptive adjective appropriate to the context. At best from the favored appellate perspective of the System as appellee, it is ambiguous and, as a matter of law, when construing statutes of such beneficial purpose, this Court is obliged to interpret it favorably to its purpose. *Howard Co. Ass'n Retired Citizens, Inc. v. Walls,* 288 Md. 526, 530 [418 A.2d 1210] (1980); *Coates [Coats] & Clark's Sales v. Stewart,* 39 Md.App. 10, 16–17 [383 A.2d 67] (1978) (construing the Workmen's Compensation Act, Md.Code Ann. Art. 101.) (Emphasis in the original)

The court reinforced its conclusion by making three "supplementary observations": (1) the failure of the Ordinance to distinguish between physical injury and mental injury; (2) its inability to appreciate, "given the obvious purpose of the Ordinance", any legislative purpose to be served by a "physical against mental" distinction; (3) "that on-the-job injuries, in the generic sense, can be occasioned by either physical or mental trauma or illness and that either can produce mental or physical, or a combination thereof, sequellae." [2]

Appellant's challenge of the trial court's interpretation of the statutory scheme relies heavily upon the interpretation of the pertinent provisions of the Retirement Systems ordinance as they existed prior to the amendment which resulted in the ordinance as it is presently constituted. Its argument proceeds thusly: Prior to its amendment, the ordinance denied to the Board of Trustees authority to grant a special disability retirement to a member who was mentally, as opposed to physically, disabled. The 1979

---

**2.** The court also reversed, as not supported by substantial evidence in the record, the hearing examiner's determination that, even if the appellee's mental disability could justify special disability retirement benefits, appellee had failed to establish a sufficient causal relationship between his physical injury and his mental disability. As we have already indicated, we need not reach this issue.

amendment, rather than effecting a substantive change in the ordinance, merely transferred the factfinding function which the Board of Trustees formerly had to a panel of hearing examiners and rendered unnecessary the function previously performed by the Medical Board, *i.e.*, certifying an applicant as incapacitated or not incapacitated for the further performance of the duties of his office. Since the only changes effected by the 1979 amendment were procedural, the interpretation of the present ordinance is the same as that given its predecessor. Implicit in this position is the additional argument that the plain language of the pertinent sections of the Retirement Systems ordinance, when they are considered together, evince a clear intent on the part of the Baltimore City Council, that an applicant's establishment of a physical incapacitation is a necessary prerequisite to an award of special disability retirement benefits.

Appellee also views the pre–1979 ordinance, particularly § 34(e), as important to the interpretation of the present ordinance. He finds particularly significant the exclusion, from the present version of § 34(e), of a qualifier for incapacitation that was included in the former version. Thus, he argues, "the elimination of the qualifier 'physically' in the July, 1979 amendment is a clear expression of the intent of the Mayor and City Council to withdraw this requirement." Appellee also finds comfort in the teaching of *Mayor & City Council of Baltimore v. Hackley*, 300 Md. 277, 289, 477 A.2d 1174 (1984), that "the level of incapacity necessary to sustain a claim for disability benefits is the same for purposes of '[ordinary disability retirement and special disability retirement]' ". Relying upon it, appellee rejects appellant's reliance upon §§ 34(c) and (e) as describing different requirements for ordinary and special disability retirement benefits. In his view, ordinary disability retirement benefits and special disability retirement benefits may not be distinguished on the basis of the kind, as opposed to the level, of disability; rather the only distinction is whether the disability arose in the line of duty.

Appellee also rejects appellant's reliance upon language in § 33(1) to support its interpretation. He, like the trial court, believes that "reading the provisions of Section 34 together to construct a reasonable and logical result requires a determination that the insertion [in § 33(1)] of the word 'physically' was not a conscious qualifier, but rather a descriptive adjective appropriate to the context." He concludes that "since 'incapacity' denotes a total loss of ability, once a claims examiner makes a finding of incapacity, the decision whether to award Section 34(c) or Section 34(e) benefits depends solely upon whether the claimant was incapacitated by a line-of-duty injury."

 The determination whether the lower court properly construed the pertinent sections of the disability retirement benefits ordinance not only requires that we review those provisions as presently constituted and compare them with those which they replaced, but that we do so in light of the well-established principles of statutory construction. Those principles, which both parties acknowledge apply, were set forth in *Hackley:*

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. Further, a court may not insert or omit words to make a statute express an intention not evidenced in its original form. Moreover, the legislative body is presumed to have had, and enacted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Finally, absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

300 Md. at 283, 477 A.2d 1174. *See also Ford Motor Land Dev. v. Comptroller,* 68 Md.App. 342, 346–47, 511 A.2d 578, *cert. denied, Comptroller v. Ford Motor Land Development,* 307 Md. 596, 516 A.2d 567 (1986). Supplementary of, and in addition to, those identified in *Hackley* are the following canons of statutory construction. The ascertainment of the intent of the legislature requires a court to consider the purpose or objective of the enactment. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628 (1987). This is true because "even where [the] language [of a particular provision or section] appears to be clear and unambiguous, it is necessary to examine that provision or section in its context." *Comptroller v. John C. Louis Co.,* 285 Md. 527, 538, 404 A.2d 1045 (1979). Furthermore, statutes dealing with the same subject matter should, if possible, be read together and harmonized, consistent with the statutes' object and scope. *Kaczorowski,* 309 Md. at 511, 525 A.2d 628; *Scott v. State,* 297 Md. 235, 245–46, 465 A.2d 1126 (1983); *Holy Cross Hosp. v. Maryland Empl. Sec. Administration,* 288 Md. 685, 698, 421 A.2d 944 (1980). Finally, a construction which leads to unreasonable and illogical results or which is inconsistent both with common sense and the purpose of the statute should be shunned. *Erwin & Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 311, 498 A.2d 1188 (1985); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195 (1985).

■ The pertinent provisions of the Disability Retirement Benefit ordinance are Baltimore City Code art. 22, §§ 33(1) and 34(c) and (e). After their amendment, effective July 1, 1979, they provided:

33. *Administration.*

(1) *Panel of Hearing Examiners.*

\* \* \* \* \* \*

Any ordinary disability or special disability claimant must make proper application to the Panel of Hearing Examiners, which application shall include a medical certification of his disability and all supporting medical documentation, on a form prescribed by the Panel of Hearing

Examiners, wherein the member shall state he has suffered a disability and that such disability prevents him from further performance of the duties of his job classification in the employ of Baltimore City. *If the claim is for a special disability benefit, he shall in addition, state that such physical incapacity was the result of an injury arising out of and in the course of the actual performance of his duty, without willful negligence on his part.* Any member who has joined this system on or after July 1, 1979, and who makes application for a special disability benefit must additionally state that the disability resulted from an injury that occurred within five (5) years of the date of his application.

\* \* \* \* \* \*

*If the matter involves a special disability claim, the member shall have the burden of proving by a preponderance of the evidence that such disability was the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on the member's part.*[3] If the matter involves a special death claim, the claimant shall have the burden of proving by a preponderance of the evidence that the death of the member arose out of and in the course of the actual performance of duty, and that the death was not caused by willful negligence on the part of the member. The hearing examiner shall make the following determinations:

(1) Whether the member suffered an injury or illness of such a nature as to preclude the member from the further performance of the duties of his job classification in the employ of Baltimore City.

(2) *If the claim is for special disability benefits, whether the physical incapacity is the result of an*

---

**3.** In addition, "[t]he member ... shall have the burden of proving by a preponderance of the evidence the nature and extent of his disability and that said disability prevents him from the further performance of the duties of the member's job classification in the employ of Baltimore City.

*injury arising out of and in the course of the actual performance of duty, without willful negligence on his part, and whether such disability qualifies under the provisions of § 34(e).* If such claim is filed by a member who joined this system on or after July 1, 1979, the claims examiner shall additionally determine whether such disability resulted from an injury that occurred within five (5) years of the date of the member's application. (Emphasis added)

\* \* \* \* \* \*

34. *Benefits.*

\* \* \* \* \* \*

(c) *Ordinary Disability Retirement Benefit.* Any member who has acquired five (5) or more years of service and who has been determined by a hearing examiner to be mentally or physically incapacitated for the further performance of the duties of the member's job classification in the employ of Baltimore City, and that such incapacity is likely to be permanent, shall be retired by the Board of Trustees on an Ordinary Disability Retirement, not less than thirty (3) and not more than ninety (90) days following the date of his filing application for Ordinary Disability Retirement Benefits.

\* \* \* \* \* \*

(e) *Special Disability Benefits.* Any member who has been determined by the hearing examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without willful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement.

Each of these sections involves the same subject matter and, so, they must be considered together. Moreover, in considering them together, we must strive to give effect to all of the provisions of each, consistent with the purpose of the Disability Retirement Benefits ordinance as a whole.

It is evident that the purpose underlying these sections is the enumeration of the substantive requirements of the two disability retirement benefits options available to an employee and to set out the procedures whereby that employee's entitlement to one or the other is to be determined. Section 34(c) and (e) prescribe the requirements of the disability which qualifies an employee for either an ordinary or special disability retirement. They do so in terms of the level of disability, *i.e.,* that the employee must be "incapacitated".[4] Only § 34(c) additionally prescribes the nature of the disability, *i.e.,* that it may be mental or physical; § 34(e), by requiring that it be total and permanent, merely emphasizes the level of the disability. As *Hackley* makes clear, denominating an incapacity as total and permanent does not increase the level of incapacity required, or in any way, distinguish it from incapacity described as mental or physical. 300 Md. at 289, 477 A.2d 1174. Describing the incapacity as total and permanent does not, however, address the question of the nature of the disability that qualifies an employee for a special disability benefit.

Section 33(1) purports to be an administrative provision, and, indeed, in large measure it is. It does, however, contain substantive provisions, albeit in the context of prescribing the procedure to be followed by the hearing examiner. For example, the requirements that a claimant, whether for an ordinary disability retirement or a special disability retirement, file a medical certification that he or she is disabled and that his or her disability prevents him or her from further performing his or her duties and that, "[i]f the claim is for a special disability benefits, he shall in addition, state that such *physical* incapacity was the result of an injury arising out of and in the course of the actual performance of his duty, without wilful negligence on his part," (emphasis added) are both procedural and substan-

---

**4.** Section 34(e) also defines the requirements of the special disability retirement in terms of causation—the incapacity must result from "an injury arising out of and in the course of the actual performance of duty...."

tive. They are substantive in that, in addition to prescribing what must be filed, they specify what is minimally required to render the claim sufficient. The provision requiring the hearing examiner to determine, when the claim is for special disability benefits, "whether the *physical* incapacity is the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, and whether such disability qualifies under the provisions of § 34(e)," (emphasis added) buttresses the point. Because it clearly prescribes a condition precedent to the award of a special disability retirement, it undoubtedly is substantive.

Section 33(1), with its requirements that a special disability retirement claimant allege a physical incapacity and that the hearing examiner make determinations concerning that physical incapacity, must be read together with § 34(e), which describes only the level of the disability required for special disability retirement benefits and § 34(c), which describes, as to ordinary disability retirement benefits, both the nature and the level of the disability required. So read, it becomes patent that, although purportedly administrative, § 33(1) gives content to § 34(e) insofar as the nature of the disability required as a prerequisite to the award of special disability retirement benefits is concerned. Construing these provisions any other way would read these requirements out of § 33(1). Furthermore, there is absolutely nothing inconsistent between a requirement that a claimant allege and the hearing examiner determine that the claimant has shown a physical disability which arises out of and in the course of employment as a prerequisite to the award of special disability retirement and one which prescribes that such a claimant be totally and permanently incapacitated. Clearly, one who is physically, but not mentally, disabled, may nevertheless be totally and permanently incapacitated.

We hold that, without regard to the pertinent provisions' pre-amendment content, the disability retirement benefit scheme contemplates the allegation and proof of a physical

incapacitation as a prerequisite to the award of special disability retirement benefits.

The identical result obtains even were we to consider the pertinent provisions of the ordinance as they existed prior to the July 1, 1979 amendment. At that time, § 33(1) provided:

> (1) *Medical Board.* The Board of Trustees shall designate a Medical Board, to be composed of three physicians not eligible to participate in the retirement system. If required, other physicians may be employed to report on special cases. The Medical Board shall arrange for and pass upon all medical examinations required under the provisions of this subtitle, shall investigate all essential statements and certificates by or on behalf of a member in connection with application for disability retirement, and shall report in writing to the Board of Trustees its conclusions and recommendations upon all the matters referred to it.

Former § 34(c) and (e) provided:

> (c) *Ordinary disability retirement benefit.* Upon the application of a member in service or the head of his department, any member who has had five or more years creditable service may be retired by the Board of Trustees, not less than thirty and not more than ninety days next following the date of filing such application, on an ordinary disability retirement allowance, provided that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired.

> (e) *Special disability benefit.* Upon the application of a member or the head of his department, any member who has been totally and permanently incapacitated for duty as a result of an injury arising out of and in the course of the actual performance of duty without wilful negligence on his part, shall be retired by the Board of Trustees, *provided that the medical board shall certify that such*

*member is physically incapacitated for the further performance of duty,* that such incapacity is likely to be permanent, and that such member should be retired. (Emphasis added)

Even a cursory review of the sections, particularly § 34(e), reveals that under the pre-amendment ordinance, to qualify for a special disability retirement, a claimant had to be "physically incapacitated." That being so and since, as we have seen, the present ordinance contains the same requirement, it necessarily follows that the 1979 amendments did not affect this requirement.

As we have seen, the 1979 amendment replaced the Medical Board with a panel of hearing examiners, to which it also entrusted the factfinding function previously performed by the Board of Trustees. In addition, that provision in § 34(e) requiring the Medical Board to certify an applicant for a special disability retirement as "physically incapacitated" was deleted and replaced by one requiring the hearing examiner to determine whether the claimant is "totally and permanently incapacitated". Similarly, the reference to the Medical Board and the certification to be made by it in former § 34(c) was deleted and replaced by a reference to a hearing examiner; the adjectives "mentally or physically" preceding the word "incapacitation" were not changed, however.

Comparison of the pertinent pre-amendment provisions of the ordinance with their post-amendment counterparts renders it patent that there is no substantial difference between them. In both cases, as former § 34(e) and present § 33(1) make clear, the kind of disability which entitles a claimant to an award of special disability retirement benefits is one which is both physical and arises out of and in the course of the actual performance of duty. Thus, unless it is read completely in isolation, the mere fact that the 1979 amendment deleted from § 34(e) the adjective "physical" as a modifier of "incapacitated" suggests nothing with regard to the requirements of the law as a whole.

It follows from the foregoing that the hearing examiner correctly construed the disability ordinance and that the trial court erred in reversing that interpretation. Consequently, we will reverse the judgment of the trial court and remand the matter to that court with instructions that it affirm the decision of the hearing examiner.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE HEARING EXAMINER. COSTS TO BE PAID BY APPELLEE.