556 A.2d 682

Timothy LAUBACH, et al.

v.

FRANKLIN SQUARE HOSPITAL, et al.

No. 884, Sept. Term, 1988.

Court of Special Appeals of Maryland.

April 26, 1989.

204

Patrick A. O'Doherty, Baltimore, for appellants.

Roy L. Mason, Gilbert F. Shelsby, Jr., Donahue, Ehrmantraut & Montedonico, Chartered for amicus curiae, The Maryland Soc. for Health Care Risk Management.

Lawrence S. Greenwald (Eugene M. Feinblatt, Anastasia Watson Smith, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief), Baltimore, for appellees, Franklin Square Hosp., Karen A. Kaminski and Richard Ayd, Albert D. Brault, Brault, Graham, Scott & Brault, Rockville.

James E. Gray and Semmes, Bowen & Semmes, Baltimore, on the brief, for appellees, Gately and Rifkin.

Argued before ROBERT M. BELL, WENNER and FISCHER, JJ.

ROBERT M. BELL, Judge.

Timothy Laubach and Nancy Laubach, his wife, appellants/cross-appellees, sued Franklin Square Hospital, cross-appellant/appellee, (variously referred to as Franklin Square or the hospital), and United States Fidelity and Guaranty Company, Richard Ayd, Karen A. Kaminski, Gail Robinson, William F. Gately, Esquire, and Allan M. Rifkin, Esquire, collectively, appellees, for fraud, violation of statute, and conspiracy.[1]

Prior to trial, each defendant moved for summary judgment. After a hearing, the court entered summary judgment in favor of every defendant except the hospital. As to the hospital, the court granted only partial summary judgment, specifically, only as to those counts alleging fraud and civil conspiracy. It denied the hospital's motion insofar as the violation of statute count was concerned; it determined that fetal heart monitoring tracings were medical

---

1. When this action was filed, a medical malpractice action, also filed by appellants and in which the hospital was also defendant, was then pending. That action has now been resolved. This action originally consisted of two counts, fraud and violation of statute, and did not include appellees Gately and Rifkin as defendants.

records within the contemplation of Maryland Health—Gen'l Code Ann. § 4–302 and that there was a dispute of material fact as to whether the hospital "refused" to turn those tracings over to appellants upon their request.

The violation of statute count proceeded to trial before a jury, at the conclusion of which, a verdict was entered in favor of appellants. The jury assessed damages, compensatory and punitive, against the hospital at one million dollars. Although satisfied to accept the jury verdict against the hospital, but anticipating this appeal by the hospital, appellants filed what they characterize as a "protective appeal", challenging only the correctness of the court's summary judgment rulings.[2]

The hospital, satisfied with the court's partial summary judgment ruling, in its favor, is aggrieved by the jury's verdict in favor of appellants. It has, therefore, filed a cross-appeal, raising four issues:

1. Whether the judgment against the hospital for compensatory damages should be reversed, because appellants failed to prove compensatory damages.

2. Whether the judgment against the hospital for punitive damages should be reversed, because the the lower court refused to give any instruction on malice and appellants failed to prove malice.

3. Whether the judgment against the hospital should be reversed, because the lower court erred in admitting evidence which was irrelevant, immaterial and highly prejudicial.

4. Whether the judgment against the hospital should be reversed, because appellants failed to prove that the hospital "refused" to disclose any "medical record" within a reasonable time.

---

**2.** At the time of the ruling, appellees Gately and Rifkin asked the court, to enter final judgment in their favor and to certify, pursuant to Maryland Rule 2–602, that there was no just reason for delay; the court refused to do so. The rulings on summary judgment thus became final and appealable only when judgment was entered in the violation of statute count.

Because resolution of the issues raised on the hospital's cross-appeal in favor of appellants would render appellants' appeal moot, we will address the cross-appeal first. We will consider the issues substantially in the order they were raised by the hospital. Before doing so, however, even though neither party has raised the matter, we will determine if the issues are preserved for our review.

For context, we begin by reviewing what occurred both at the close of appellants' case and at the close of all the evidence. This is necessary because, in order to preserve an issue for appellate review, the moving party must have, in to making the motion either at the close of the plaintiff's case or after all the evidence, "state[d] with particularity all reasons why the motion should be granted." Maryland Rule 2–519(a).[3]

At the conclusion of appellants' case, the hospital submitted a written motion for judgment and a memorandum in support thereof. The memorandum contained the following argument:

> In addition, the fetal monitor strips are not "medical records" as defined by the statute. The statute defines a "medical records" as defined by the statute. [sic] The statute defines a "medical record" as a "record of medical

---

3. As we had previously done in the criminal context, *see Warfield v. State*, 76 Md.App. 141, 543 A.2d 885 (1988), we have held that, in civil cases, the "renewal" of a motion for judgment after the withdrawal of the initial motion by the presentation of evidence does not comply with the specificity requirement of Rule 2–519(a). *See Ford v. Tittsworth*, 77 Md.App. 770, 774, 551 A.2d 945 (1989). Our *Warfield* has been reversed, *Warfield v. State*, 315 Md. 474, 554 A.2d 1238 (1989) and, in the process, the Court of Appeals has made clear that the particularity requirement of the Rule is satisfied if, at the end of all the evidence, the party "states that the motion is based upon the same reasons given at the time the original motion was made, or ... 'renews' a motion for judgment ... thereby implicitly incorporat[ing] by reference the reasons previously given." *Id.*, at 487–488, 554 A.2d 1238. Moreover, because the Court explicitly overruled, insofar as it supports the rationale of our *Warfield, Rockville Corp. v. Rogan*, 246 Md. 482, 229 A.2d 76 (1967), a case relied upon by *Tittsworth*, 315 Md. at 488, 490, 554 A.2d 1238, we think it safe to predict that *Tittsworth*, too, has been overruled.

care that a facility keeps on [an] individual."
§ 4-302(a)(3)(i) MD HEALTH GENERAL CODE ANN.
(1982). The fetal tracings are scientific data [compiled]
for the physician's use in prescribing or performing the
necessary medical treatment. The record of medical care
would be the record evidencing that a fetal heart monitor
was utilized on the patient. Moreover, if the hospital did
not as a policy consider the tracings as a medical record,
it is impossible for the HOSPITAL to actively refuse to
provide them when medical records are requested.

It appears in the portion of the memorandum headed,
Defendant Franklin Square Hospital Did Not Refuse To
Produce The Fetal Heart Monitor Tracings. Interestingly,
the hospital's counsel did not address the point when he
orally argued the motion for judgment; counsel confined
his "refusal to disclose" argument to addressing whether
sufficient information had been produced to prove that any
employee of the hospital "refused" to provide the tracings.
In that regard, he disputed that the hospital could be found
liable on the basis of what the hospital's attorneys may
have known or might have done. The hospital also argued
that, since disclosure of the tracings was the subject of a
discovery motion, filed in the malpractice action, and re-
solved by the panel chairman, the issue was res judicata.[4]
The court, of course, denied the motion.

At the conclusion of all the evidence, the following collo-
quy occurred:

MR. MASON [The hospital's counsel]: Yes, your Honor.
Of course, we need to make our—we need to review our
motion for judgment again.

THE COURT: Okay.

MR. MASON: Your Honor, at this time on behalf of the
Franklin Square Hospital we would renew our motion.
Well, first of all, let me say we close the evidence. The
defense rests. We would renew our motion on the

---

**4.** It is interesting to note that this issue was not raised in the memo-
randum and has not been pursued since.

grounds as stated in our memorandum and as stated in oral argument before your Honor, I believe it was day before yesterday, at the close of the plaintiff's case.

THE COURT: Alright. Ready then: bring the jury please.

MR. O'DOHERTY [Appellants' counsel]: I didn't think there was a rule on that.

THE COURT: Sorry?

MR. O'DOHERTY: I didn't hear you respond to that.

THE COURT: You are absolutely correct. Motion denied. Thank you. . . .

As can be seen from the colloquy, counsel did not orally state "with particularity" *any* reasons why the hospital's motion for judgment should be granted; all he did was refer to the arguments made in the memorandum submitted in support of the hospital's motion for judgment and those stated in oral argument several days earlier.

The hospital moved, as Rule 2–532(a)[5] permits, for judgment notwithstanding the verdict and/or for new trial. Accompanying this motion was a 35 page memorandum setting forth arguments in support of the hospital's position. Under the argument captioned, Defendant Franklin Square Hospital Did Not Refuse To Produce The Fetal Heart Monitor Tracings, the hospital addressed the status of the tracings themselves. In pertinent part, it argued:

> In addition, Franklin Square Hospital should not be held in violation of the statute in failing to produce the fetal heart monitor tracings after a request for the "medical records", when the Hospital as a policy does not consider fetal heart monitor tracings a "medical record". The statute defines a "medical record" as a "record of medical care that a facility keeps on an individual."

---

5. That Rule provides:
   > In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and *only on the grounds advanced in support of the earlier motion.* (Emphasis added)

§ 4–302(a)(3)(1) [§ 4–302(a)(3)(i) ] *MD. HEALTH GENER-AL CODE ANN.* (1982).  The fetal monitor tracings are scientific data [compiled] for the physician's use in prescribing or performing the necessary medical treatment.  The record of medical care would be the record evidencing that a fetal heart monitor was utilized on the patient. . . .

After reviewing that portion of the evidence that it found pertinent to the issue, the argument concluded:

> In sum, if the Hospital did not consider the fetal heart monitor tracings a "medical record" they lack the requisite scienter for violation of the statute.  The statute, which imposes a *criminal* penalty for the individual who actually violated it, requires proof of an intentional and deliberate decision not to disclose the tracings after a specific request for the tracings.  There is no evidence that any employer [sic] or agent of Franklin Square Hospital intentionally refused to provide the fetal heart monitor tracings after a specific request for them.  Accordingly, as a matter of law the evidence viewed in a light most favorable to the Plaintiff is insufficient to support a claim for violation of the statute.[6]  (Emphasis in original)

---

**6.**  Before the court instructed the jury pertinent to this issue, the hospital sought to have included on the special verdict sheet a question concerning "whether the Franklin Square Hospital considered this fetal monitor strip a medical record."  When the court indicated that was not an issue and suggested that the hospital may have conceded that they are medical records, the following colloquy occurred:

> MR. MASON: No, Your Honor, I don't concede that at all, because the strips themselves, unless they are medical records—statute said medical record.  So unless the person who is—
> THE COURT: You are going to make that argument.  You are making two things.  The statute says medical record and [the] statute defines a medical record.
> Now, if you want me to rule as a matter of law that the fetal heart strips are not a medical record, then I've got to look at that and determine—because it certainly can't be a question of what they thought.

As we have noted above, the memorandum the hospital filed in support of its motion for judgment, made at the close of appellants' case, contained arguments quite similar to those advanced here; however, the hospital's oral argument presented in support of the motion did not, at that time, address all of them. It is even clearer, again as we pointed out above, that when the hospital "renewed" its motion for judgment at the close of all the evidence, it did not "orally" state with particularity all of the reasons why the motion should be granted; in fact, counsel did not make an oral argument at all. Instead, counsel referred to the memorandum previously filed and the oral arguments previously made in lieu of further oral argument. In this case the memorandum contained particularized reasons, including those advanced on appeal, why the motion should have been granted. Since, however, one of the arguments, which

---

Now, what you are dealing with is the issue of refusal. You can only refuse to do something if you make an intentional decision to do it.

MR. MASON: That's correct, your Honor.

THE COURT: And the argument for the issue you are raising is when somebody requests, give me the medical record, and they give them what they believe is the medical record, there is no refusal because they didn't consciously decide not to give fetal heart strips.

MR. MASON: That's exactly what I am saying, your Honor.

THE COURT: That's not a question of law. That's a question of—it is now, I understand, but I'm not going to—it is not an issue to be segregated.

Despite this colloquy, the hospital still insisted that the court "specificically talk about the fetal monitoring strips [however] the question assumes they are medical records in the jury's mind".

After the court instructed the jury, the hospital excepted as follows:

Thirdly, would take an exception to the court's failure to give instruction that whether or not the hospital refuses to provide a record, a medical record or fetal monitor strips turns on the hospital's determination as to whether or not the item in discussion is actually a medical record.

* * * * * *

Believe I should also take exception now to the Court's failure to include, as I mentioned out of the presence of the jury, a specific question to the jury in the jury verdict sheet on the issue as to whether or not fetal monitor strips are indeed medical record[s]. . . .

was set out in the memorandum and raised on appeal, was not argued orally either at the end of the plaintiff's case or at the close of all the evidence, the question thus becomes: does the reference to a memorandum previously filed with the court suffice to comply with the requirements of the Rule?

The issue has not heretofore been addressed.[7] If we are to address it, we must consider the purpose of Rule 2-519 and whether construing it so as to permit reference to a memorandum to comply with its specificity requirement furthers that purpose.

The Court of Appeals' explanation of its *Warfield* decision and the defect in ours 315 Md. at 487–488, 554 A.2d 1238, is helpful.

> As we have seen there were no reasons expressly advanced at the time the second motion was made. But when we consider the purpose of the statute and the rule in the light of their context, *see Kaczorowski v. City of Baltimore,* 309 Md. 505, 516, 525 A.2d 628 (1987), we are satisfied that the command to particularize reasons has

---

7. The issue presented in *K–Mart Corp. v. Salmon,* 76 Md.App. 568, 547 A.2d 1069 (1988) is similar, but, we think, distinguishable. At the end of the plaintiff's case and just prior to offering oral argument on the motion, the defendants submitted to the court a written motion for judgment and a 20 page memorandum of law in support thereof. Although the motion and the memorandum referred to one of the grounds raised on appeal, the defendants did not mention that ground during oral argument on the motion. The motion having been denied, they presented their case and, at the close of all the evidence, renewed their motion for judgment. So far as the record reveals, the defendants did not refer to the written motion or the memorandum when renewing their motion, stating instead:

> In reference to the malicious prosecution, your Honor, I think the court has exhaustively looked at all of those issues this morning on the original motion. I don't think that the posture of that has changed in spite of the testimony.

76 Md.App. at 581, 547 A.2d 1069. In holding that the issue addressed in the motion and memorandum, but not in oral argument, had not been preserved, we stated "The mere referral to a possible reason for judgment in a written memorandum, followed by an oral argument in which the issue is ignored and not further addressed, constitutes an abandonment of that issue." 76 Md.App. at 583, 547 A.2d 1069.

been met in the circumstances here. The general purpose of the statute and the rule is patent. It is to implement, by means of a motion for judgment of acquittal, the constitutional authority given an appellate court to pass on the sufficiency of the evidence. The specific purpose of the mandate of the rule to particularize the reasons for the motion is to enable the trial judge to be aware of the precise basis for the defendant's belief that the evidence is insufficient. Then the judge in determining the motion may fully appreciate the position of the defendant. All in all the command to particularize the reasons operates to the benefit of the defendant and also acts as an aid to the trial judge.

When a defendant offers evidence on his own behalf after his motion for acquittal is denied, the motion is withdrawn and not subject to review. But the reasons given for the motion are still within the ambit of the trial; they are not erased. To strike them from the record so as to preclude their consideration with respect to the second motion is against sound reason, common sense, and the legislative intent. We do not see the "great burden" which the Court of Special Appeals fears this view would impose on the trial judge. *Warfield,* 76 Md.App. at 147, 543 A.2d 885.

Although a criminal case, the principles stated apply equally to civil cases. *Id.* 315 Md. at 488, 554 A.2d 1238; *State v. Lyles,* 308 Md. 129, 135–36, 517 A.2d 761 (1986). It is obvious, however, that this discussion was directed at oral argument and not at a situation where a memorandum had been submitted. Thus, it is not dispositive. Ordinarily, the arguments made in a memorandum are stated with particularity, if the court would but read them. And, if the court did read the memorandum, it could "make an intelligent and informed ruling on a subsequent motion made at the close of all the evidence without the benefit of re-argument...."

Although arising in a different context, *i.e.,* in the context

of Rule 554, the predecessor of present Rule 2–520,[8] what
the Court of Appeals said in *Sergeant Co. v. Pickett*, 283
Md. 284, 288, 388 A.2d 543 (1978), is also helpful:

> The reason for Rule 554(d) and (e) [9] as this Court stated in
> *Fisher v. Balto. Transit Co.*, 184 Md. 399, 402, 41 A.2d
> 297 (1945), "is obviously to enable the trial court to
> correct any inadvertent error or omission in the oral
> charge, as well as to limit the review on appeal to those
> errors which are brought to the trial court's attention."
> In this matter, the trial judge is afforded "an opportunity
> to amend or supplement his charge if he deems an amend-
> ment necessary." *State v. Wooleyhan Transport Co.*,
> 192 Md. 686, 689–90, 65 A.2d 321 (1949). Succinctly put,
> then, the rule is designed to afford the trial judge and
> opposing counsel ample opportunity to be informed of the
> nature and grounds of the exception. Indeed, no special
> form is required for the objection and no ground need
> even be stated "where the record makes clear that all
> parties and the court understood the reason for the
> objection." *Exxon Corp. v. Kelly*, 281 Md. 689, 694 n. 6,
> 381 A.2d 1146 (1978).

---

**8.** Subsection (e) of that Rule, which is the subsection pertinent to this
discussion, provides:

> *Objections.*—No party may assign as error the giving or the failure
> to give an instruction unless the party objects on the record
> promptly after the court instructs the jury, stating distinctly the
> matter to which the party objects and the grounds of the objec-
> tion....

**9.** Those sections, in relevant part, provided:

> (d) If a party has an objection to any portion of any instruction
> given, or to any omission therefrom for the failure to give any
> instruction, he shall before the jury retires to consider its verdict
> make such objection stating distinctly the portion, or omission, or
> failure to instruct to which he objects and the ground of his
> objection....
> (e) Upon appeal a party in assigning error in the instructions,
> shall be restricted to (1) the particular portion of the instructions
> given on a particular omission therefrom or the particular failure
> to instruct distinctly objected to before the jury retired and (2) the
> grounds of objection distinctly stated at the time, and no other
> errors or assignments of error in the instructions shall be con-
> sidered by the appellate court.

The court acknowledged those cases holding that "reference to the instruction by number, without a statement of the specific grounds for objection distinctly stated at the time exception is taken, is not a compliance with the Rules ..." *see Belt's Wharf v. Internat. Corp.*, 213 Md. 585, 592, 132 A.2d 588 (1957). *See also, e.g., Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 490–91, 250 A.2d 653 (1969); *Podolski v. Sibley*, 12 Md.App. 642, 644–45, 280 A.2d 294 (1971). It held, however, that, because, in that case, the appellant provided, in addition to the request number, information, *albeit* precious little, sufficient to identify for the trial judge the nature and ground of the objection, thus serving the purpose of the Rule, the exceptions were preserved. 283 Md. at 289, 388 A.2d 543. The court explained:

> Here, further exposition by appellants' counsel of the "ground" for the principle of law reflected by the instruction would have been both fruitless and unnecessary insofar as the rule was concerned. Once the trial court had signified that it comprehended the precise point being asserted, but nevertheless rejected it out-of-hand, the requirements of the rule had been met. At a minimum, this certainly represented substantial compliance with [the] Rule ... and, we hold, was therefore sufficient to preserve the issue for appellate review. (Footnote omitted)

283 Md. at 289–90, 388 A.2d 543.

■ Turning to the case *sub judice*, we hold that, upon "renewal" of a motion for judgment at the close of all the evidence, reference to a memorandum, previously submitted to the court, which sets forth with particularity the arguments in support of the motion is sufficient compliance with Maryland Rule 2–519(a). As we have already indicated, the arguments in the subject memorandum were particularized and they did not become less so at the end of all the evidence. We are mindful, of course, of the fact that the record does not reflect when the trial judge read the memorandum. We are satisfied, however, that he did so and, in any event, is charged with having done so. Nor are we

concerned by the fact that, in oral argument on the motion for judgment at the end of a plaintiff's case, not all arguments pressed on appeal were made; it is not necessary that one orally argue every point that one has made in a memorandum in support of a motion.

There is no inconsistency between the Rule we now enunciate and *Warfield.* Indeed, it is but a logical extension of *Warfield;* if a court is required to inquire should it desire clarification of the basis for a "renewed" motion for judgment, *see* 315 Md. at 488, 554 A.2d 1238, when a memorandum has been filed and is, therefore before the court, the court certainly should be required to refer to it, when necessary.

## COMPENSATORY DAMAGES

The hospital's contention that appellants failed to prove entitlement to compensatory damages, proceeds on two premises: first, that in the absence of a physical injury, damages for emotional distress are not recoverable and, second, the applicable statute does not permit litigation costs to be recovered as actual damages. With respect to the former premise, the hospital acknowledges that emotional distress may form the basis for the recovery of actual damages where the emotional distress arises from an intentional tort, such as libel, slander, malicious prosecution, fraud, and the like. *See H & R Block, Inc. v. Testerman,* 275 Md. 36, 48–49, 338 A.2d 48 (1975), *Zeigler v. F Street Corp.,* 248 Md. 223, 225–26, 235 A.2d 703 (1967); *Davis v. United States Dept. of Army,* 602 F.Supp. 355, 360 (D.Md. 1985). The hospital contends, however, that that is not what is involved here; this case simply involves the "violation of a statutory command to disclose records, which, on its face, is different in kind than defamation, fraud, malicious prosecution, and similar torts involving an element of intentionally harming someone." On the contrary, the hospital suggests that "the alleged violation of statute is more analogous to a breach of contract, rather than tort, and there appears to be no authority for allowing damages for

emotional distress arising from a breach of contract." Indeed, the hospital asserts that, at best, the cause of action in this case is analogous to the emotional distress arising from negligence; in such situations, there can be no recovery for emotional distress in the absence of "some clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Vance v. Vance*, 286 Md. 490, 500, 408 A.2d 728 (1979).

Concerning the latter premise, the hospital argues that, since as a general rule litigation costs are not recoverable in either the same or a subsequent action, *see e.g., Archway Motors v. Herman*, 41 Md.App. 40, 43, 394 A.2d 1228 (1978), *cert. denied*, 284 Md. 741 (1979), and since the only actual damages appellants alleged, other than that for emotional distress, were the cost of expert witnesses and a transcript, both in connection with the medical malpractice action, the evidence, of necessity, could not form the basis for the award of actual damages in this action.

Maryland Health—General Code Ann. § 4–302(d)(2) provides:

> If a facility refuses to disclose a medical record within a reasonable time after a person in interest requests the disclosure, the facility is, in addition to any liability for actual damages, liable for punitive damages.

By its express terms, the statute proscribes intentional, as opposed to negligent or contractual, conduct. The jury was so instructed, at the hospital's request, and without objection.[10] This same point forms the basis for appellee's argument concerning the sufficiency of appellants' proof of the hospital's refusal to disclose the medical records. Specifically, the hospital, relying upon the definition of "re-

---

**10.** On this point, the court instructed the jury:
> Now, refusal within the meaning of this statute means an affirmative denial or intention not to comply with the request.
> In order for there to be a refusal, there must be a deliberate, conscious decision not to disclose the record within a reasonable time.

fuse" in Black's Law Dictionary,[11] maintains that appellants did no more than show that the fetal monitoring tracings were not produced as opposed to proving that the hospital refused to produce them. In other words, the hospital contends that there never was any proof that the hospital *mentally* determined not to comply with appellants' request for those medical records.

■ Notwithstanding the cause of action is based upon the violation of a statute, as opposed to the violation of the common law, the conduct which forms the basis for the cause of action is more closely akin to intentional torts than to negligent acts. Consequently, there was no need for appellants to prove a physical injury of the sort required by the Court of Appeals in *Vance, supra.* It was sufficient that the emotional distress and mental suffering were elements of damages emanating directly from the intentional conduct of the hospital in refusing to disclose the fetal monitoring tracings.

■ The hospital fares no better insofar as its second premise is concerned. As we have seen, the statute permits recovery of "actual damages" from a violator. The statute does not specify or define what these damages are. Notwithstanding that the general rule is that litigation costs may not be recovered in either the same or a subsequent action, *see Archway Motors,* 41 Md.App. at 43, 394 A.2d 1228; *Freedman v. Seidler,* 233 Md. 39, 47, 194 A.2d 778 (1963), where such costs are incurred directly as a result of the intentional conduct of the violator, they constitute actual damages arising out of the violation of the statute.

---

**11.** Black's Law Dictionary, 1152–53, 5th Ed.1979, has this to say in reference to "refusal":

> "Refusal ... 'refusal' implies the positive denial of an application or command, or at least a mental determination not to comply. A rejection, a denial of what is asked ... refused. To deny, decline, reject."

"Failed" is distinguished from "refused" on the basis that the latter "involves an act of the will, while [the former] may be an act of inevitable necessity."

Indeed, that is especially the case when, as here, the litigation costs were incurred in a prior, and separate, action. In this case, the costs allowed were the expenses incurred by appellants to obtain the original fetal monitoring tracings after the hospital's counsel refused to provide them voluntarily and the fee paid to appellants' expert witness for an opinion based upon the facts as they were known prior to production of the tracings. Neither of these expenses would have been incurred *but for* the conduct of the hospital in "refusing" to disclose the fetal monitoring tracings.

## PUNITIVE DAMAGES

The hospital contends that the trial court erred when it refused to instruct the jury that an indispensable precondition to the award of punitive damages is proof of "malice". It concedes that the statute, rather than set forth the standard for the award of punitive damages, merely provides that such damages may be awarded. Nevertheless, the hospital believes that the common law standard for the award of punitive damages must be read into the statute.

On the question of punitive damages, the trial judge instructed the jury:

As I said, the statute allows recovery if refusal is shown for actual damages and for punitive damages.

If you award actual damages, you may also award, but you are not required to, an additional amount for punitive damages. Punitive damages are awarded under the statute to punish hospitals and other facilities for, or to punish a hospital or other facility which has refused to disclose a medical record within a reasonable time after a person of interest has requested the disclosure and also to deter or discourage other hospitals or facilities from acting in a similar manner. In other words, punishment and deterrence are the underpinnings of the punitive damage aspect of the case.

■ As we have already seen, the statute, by its express terms, prohibits intentional conduct. In fact, it seems quite

clear that the conduct which the statute seeks to regulate, *i.e.,* prohibit and, to the extent necessary, punish and deter, is that which is described by the express terms of the statute itself. Thus, it would appear to follow that insofar as punitive damages are concerned, the court need do no more than instruct the jury in the words of the statute. Whether, as the hospital has recognized, and, indeed, argued below, the hospital merely failed to comply or, by an act of violation, refused to comply is a question to be answered by the jury after proper instructions. The jury was properly instructed in accordance with the hospital's requests. That being so, we find it difficult to understand what instructing the jury on malice would have added. We perceive no error.

## SUFFICIENCY OF EVIDENCE OF VIOLATION OF STATUTE

The correctness of the trial court's ruling on its motions for judgment and judgment notwithstanding the verdict is the focus of the hospital's next argument. That issue necessarily involves an examination of the question whether appellants met their burden of proof under the statute and, thus, is one of sufficiency of the evidence. Of particular importance in this regard are the determination whether there was sufficient evidence of the hospital's "refusal" to disclose medical records within a reasonable time and whether the evidence demonstrated that the fetal monitoring tracings constituted "medical records", as defined in Maryland Health General Code Ann. § 4–302(a)(3).[12]

---

**12.** That section provides:
(a) *Definitions.*—(1) In this section the following words have the meanings indicated.
  *   *   *   *   *   *
(3)(i) "Medical Record" means each record of medical care that a facility keeps on an individual.
(ii) "Medical Record" includes a record that is kept in manual or automated form.

Characterizing the jury's verdict, and, in particular, its basis, as "fatally flawed", due to appellants' failure to prove requisite predicates, *i.e.*, that the hospital "refused" to disclose the tapes and that the tapes constituted "medical records", the hospital urges that we reverse the judgment and remand for new trial. In support, it proffers multi-faceted arguments.

First, relying upon Black's Law Dictionary and the court's instructions on the point, *see supra* n. 8 and 9, it asserts that the record is devoid of any evidence of a "refusal" by the hospital of appellants' request in 1981, two years prior to the initiation of litigation, for fetal monitoring tracings. While it acknowledges that the tracings were not produced, that was merely evidence of a failure to comply rather than a "mental determination not to comply", a necessary prerequisite to liability under the statute. In the hospital's view, that this is so is buttressed by the fact that it had no motive to refuse the 1981 request. The hospital also denies that there is any evidence that appellants' 1983 request was refused. The primary basis for this argument is that that request sought the medical records of the baby, not those of the mother; so, it contends, that request could not be the basis for liability under the statute.

Because, within 78 days of the written request for production of the monitoring tracings for use in the medical malpractice action, they were supplied, the hospital contends that the 1984 request for the tracings was fully complied with. It also contends that 78 days is not an unusual length of time for production of records. The hospital thus reiterates the argument that the appellants have once again failed to prove that the hospital refused to disclose the records.

The hospital's final argument is that the fetal monitoring tracings are not medical records. In support of that contention, it asserts that the uncontradicted evidence in the case is to that effect and that related legislation and regulations

are corroborative.[13]

The hospital's argument concerning the 1981 and 1983 requests rely on the fact that in making them, appellants did not specifically mention fetal monitoring tracings. This argument ignores the evidence in the record which justified the following instructions by the court:

> Now, the hospital is a corporation and corporations act through their employees or through their agents. So, the hospital, the defendant, is responsible for the acts of its employees.
>
> So, the question is in that context, did an employee of the hospital refuse to disclose the strips within a reasonable period of time, within a reasonable time.
>
> Now, a hospital may also be responsible for the acts of its agents.
>
> Now, a lawyer who is retained by or for a hospital is an agent of hospital. The hospital would be responsible for the acts of the lawyer, of the agent only if, if authorized to act or only if it was aware of the act, had knowledge of the act, and acquiesced in it, indicated by nonaction that it approved the act of the lawyer.
>
> So two, one is the employee, whatever the employee does the hospital is responsible. Whatever the lawyer does, the hospital is responsible only if it authorized that act or it knew about that act and acquiesced [in] it, accepted it as the act of the hospital.
>
> So, question number 1, did the Defendant refuse to disclose the fetal monitoring strips within a reasonable time?

---

**13.** The hospital refers, specifically, to Maryland Health–General Code Ann. §§ 4–303(b) and 4–305(a), both relating to the destruction of "medical records" and related material. It also relies upon regulations which were in effect through October 1, 1983. *See* COMAR 10.07.01.12F, "Medical Records and Reports". In the case of the latter, the hospital finds significant the fact that the regulations did not specify, in the list of items constituting medical records, fetal monitoring strips, or other "source" material.

The hospital did not except to the instructions and, contrary to the position it took below, it does not here argue that it is not bound by the acts of its attorneys. Apparently conceding the principle embodied in the instruction, the hospital's only contention appears to be that its failure to supply the tracings did not constitute a "refusal" because there was never a request that it do so.[14]

■ There was evidence in the record that counsel for appellants, in communications with counsel for the hospital, in connection with a malpractice action filed by appellants against the hospital and others, specifically requested that the fetal heart monitoring tracings be produced. This request was made in connection with appellants' medical malpractice action against the hospital and others. Moreover, appellants' counsel testified that that was not the first discussion he had had with the hospital concerning appellants' need for the tracings. This is confirmed, it appears, by a letter, dated September 7, 1984, from appellee Gately to the chairman of the Health Claims Arbitration panel. In that letter, Gately reported, based on conversations with appellee Rifkin and hospital personnel, that a prior investigation to locate the tracings had failed to turn them up; he concluded that they were not available. In addition to the evidence that appellants requested fetal monitoring tracings, there is evidence in the record that the hospital was on notice as to appellants' need for, and desire to have, them. Notice to counsel is notice to the client.[15] *See Williams v.*

---

**14.** It might appear that this argument is not applicable to the 1984 request. Closer inspection, however, demonstrates that it is. Unless the requests can be viewed as separate, as the hospital would want to view them, then the entire period ranging from 1981 through 1984 would appropriately be considered by the jury in determining the question of the hospital's refusal. Thus, by structuring the argument as it has done, the hospital implicitly maintains that a refusal may only occur if there has been a specific request for them to disclose fetal monitoring tracings.

**15.** In his affidavit in support of his motion for summary judgment, appellee Rifkin, indicated that, having been retained to represent the hospital, he sought to determine whether the hospital had fetal moni-

*Skyline Development Corp.*, 265 Md. 130, 165, 288 A.2d 333 (1972).

■ We turn now to the hospital's argument that the tracings are not medical records. At the outset, it must be remembered that this argument has relevance only if the trier of fact finds that appellants did not specifically request the tracings. Should the contrary finding be made, *i.e.*, that the tracings were specifically requested, then we think it patent that the statute is broad enough to encompass the tracings even if one were to assume that the tracings were not contemplated as medical records by other sections of the code. In other words, simply because the tracings may not be medical records for all purposes, they did not indicate that it would not be medical records for the purpose of this statute.[16]

■ Even though the trier of fact may conclude that there was no specific request for the tracings, we believe that appellants' argument will, nevertheless, fail. This very issue was presented to the hearing judge and it was his opinion that, under the circumstances of this case, the fetal monitoring tracings are medical records. We are persuaded that he was correct and, therefore, adopt his rationale:

> The Court concludes, however, that because of the markings on the fetal heart monitor strips, and in particular the designation of when Pitocin was administered and increased, that those, at least those tracings to constitute a medical record within the purview of Section 4–302.

---

toring tracings. From this, it may be inferred that appellants also were aware of the importance of the tracings and the fact that they intended that they be encompassed in their request for medical records. This is also consistent with appellants' assertion that their cause of action for medical malpractice against the hospital related to the malfunctioning of the fetal monitoring tracing machine.

**16.** The trial judge's comments concerning the applicability of the statute to fetal heart strips suggest that he believed that, for purposes of § 4–302(d)(2), "strips or x-rays or anything else that the hospital has that is available if it is requested" must be disclosed.

I don't know whether the legislature meant to limit the medical records to what the hospital thinks a medical record is. But in this instance, at least because it records the administration of pitocin, which is a record of medical care, which is quite apart from the fact that other records of that were also made, that those tracings do constitute a medical record under that statute.

Interpreting the statute in this fashion gives effect to both § 4–302 and those sections defining medical records, *Kaczorowski v. City of Baltimore,* 309 Md. 505, 511, 525 A.2d 628 (1987); *City of Baltimore v. Hackley,* 300 Md. 277, 477 A.2d 1174 (1984); *Board of Trustees v. Kielczewski,* 77 Md.App. 581, 588, 551 A.2d 485 (1989), and is consistent with the purpose of § 4–302. *See Kaczorowski,* 309 Md. at 513–16, 525 A.2d 628.

## EVIDENTIARY RULINGS

■ The final challenge to the judgment is premised upon the trial judge's having erred in allowing Mr. Laubauch to testify to irrelevant, immaterial and highly prejudicial matters. Specifically, the hospital complains about the court permitting him to testify concerning his wife's treatment, the circumstances surrounding his daughter's birth, and the circumstances surrounding her death. In support of this argument, the hospital sets out 9½ pages of testimony, which it characterizes as "so highly inflammatory that the hospital was gravely prejudiced" and as a "classic example of an appeal to emotions through evidence whose probative value was non-existent. Whatever relevance it may have had to the underlying medical malpractice case, it had no relevance to the instant case—it had no relevance to whether the hospital refused to disclose any medical record or to damages." [17]

---

17. The hospital moved *in limine* before trial to exclude such testimony. The court granted the motion. Yet another of the hospital's complaints relates to the court's admission of the evidence after it had granted the motion *in limine.*

We have reviewed all of the testimony cited by the hospital. We have also reviewed the arguments by appellants opposing the hospital's contention that such evidence was highly inflammatory and "gravely prejudiced" the hospital. Though we are of the opinion that some of it was irrelevant, we do not believe that it rose to the level of being so inflammatory or prejudicial as to constitute reversible error. In fact, much of that testimony provided the background from which the jury could conclude whether, and to what extent, appellants suffered damage or injury from the refusal of the hospital to comply with the request that the records be disclosed.

Having determined that the judgment against the hospital for failure to disclose medical records must be affirmed, it is not necessary for us to address the appellants' cross-appeal. Suffice it to say that were we called upon to address appellants' cross-appeal, it is unlikely that appellants would be happy with our disposition; we discern absolutely no basis upon which to overrule the hearing judge's grant of summary judgment in favor of appellees.

JUDGMENTS AFFIRMED. COSTS AS TO THE CROSS–APPEAL ARE TO BE PAID BY THE HOSPITAL. ALL OTHER COSTS ARE TO BE PAID BY APPELLANTS.